J-A04041-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JENNIFER D. BROSSO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID J. BROSSO | : | No. 1706 EDA 2023 |

Appeal from the Order Entered June 9, 2023
In the Court of Common Pleas of Montgomery County
Domestic Relations at No(s): 2022-DR-00137/PACSES 333301302

BEFORE:   STABILE, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED NOVEMBER 19, 2024**

Jennifer D. Brosso ("Mother") appeals from the "Supplemental Order Pursuant to Remand" that, *inter alia*, obligates her to pay a total amount of $1,962.00 per month in child support and alimony *pendente lite* ("APL") to David J. Brosso ("Father").[1] After a thorough review of the record, we affirm.

As recounted by the lower court:

Father filed a Complaint for Support and APL on January 27, 2022, and Mother filed a Complaint for APL and Child Support on February 4, 2022. The cases were consolidated and the matters

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Although the order aggregates both child support and APL, only the child support portion of the award is presently appealable. ***See Leister v. Leister***, 684 A.2d 192, 195 (Pa. Super. 1996) (*en banc*) (establishing that an award of APL is not appealable until all economic issues have been resolved by pending divorce decree). As such, any appellate challenge to the $1,286.00 per month in APL that Mother is required to pay must be deferred until after all economic claims are finalized.

were heard on January 4, 2023, and January 30, 2023, before a Support Hearing Officer. The Hearing Officer issued two (2) separate Recommendations and Orders on February 8, 2023. The Hearing Officer denied Mother's request for APL and directed that Mother pay APL to Father. The Hearing Officer also directed that Mother pay Father Child Support.

Mother filed Support Exceptions on February 27, 2023 and Father filed Cross-Exceptions on February 28, 2023. Oral argument was held on April 10, 2023, with each party represented by counsel. After hearing argument and upon review of the record, [the lower] [c]ourt found as follows:

Mother and Father were married in 2007 and separated in 2021. A divorce action was commenced on September 15, 2021, which divorce action is still pending as of the date of [the lower court's] [o]pinion. The parties have shared legal and physical custody of their three (3) minor children. Mother resides in the marital residence and Father resides in a rental property owned by one (1) of their business entities.

Mother is a [certified public accountant] and has a position as senior director of procurement for TEVA Pharmaceutical. In 2022, her gross income was approximately $253,796.

Father has a [bachelor of arts] and [master of business administration] in accounting and finance. He has been a real estate developer since 2007. Mother and Father have a business entity known as "DJB LLP", which owns two (2) residential rental properties. Father has a business entity known as "DJB LLC", which owns numerous residential rental properties. Father also owns a business known as "Dryden Court Development" (Dryden), which owns commercial property. The commercial property is leased by a company known as "Elysium One", which paid Father a one-time consulting fee for $60,000 in 2022 and leases the property for $232,000 per year. Elysium One also pays Dryden the amount of $60,000 to lease equipment owned by the business located at the property. The lease payment is applied to Dryden's debt service on the property and no income is realized from the lease.

Due to the pending divorce and the ongoing hostilities between the parties, a receiver was appointed by court order dated March 8, 2022, to run DJB LLP and DJB LLC [("the real estate entities")]. The receiver's duties are to review accounts for fraud, monitor activity in the accounts and ensure that all account activity is business related. The receiver had been paid fees of $80,000 and was owed an additional $20,000 as of the date of the support hearing. Although there is a court order dated November 14, 2022, directing that Father be paid a salary from the businesses in the amount of $70,000 per year commencing as of October 13, 2022, as of the date of the support hearing he had received no payment toward his court-ordered salary. The receiver testified at the hearing that there was insufficient cash flow from the businesses to pay Father a salary.

Father's income in 2022 consisted of the following: one-time consulting fee from Elysium One of $60,000, equipment lease payment of $5,000 from Elysium, a payment from Database [S]ervices for $6,210 and a distribution from Dryden of $10,000 paid toward Father's legal fees, along with an additional payment of $2,700 made to Father. Father also lives in one of the rental properties owned by the business. Father proffered that the rental value for his unit was $15,639 per year, which was accepted by the Hearing Officer, who assessed this amount as income to Father in 2022. The total income from these sources to Father in 2022 was $99,549. This amount did not include the court-ordered $70,000 salary to be paid to Father, as there was insufficient income to pay him.

Although Father testified that he had applied for a variety of jobs and was continuing to network and look for employment, he is 56 years old and has worked for himself as a real estate developer since 2007. He presented a "journal" of his job seeking activities that included interviews, phone calls, discussions and meetings. Father had not received a job offer as a result of his job search and indicated that his age was a factor in some of the positions he applied for. The Hearing Officer found the reasons for Father's inability to find employment valid. The Hearing Officer, therefore, assessed Father's earning capacity at the level that he testified he was making when he was in control of his businesses, which was $168,000 per year.

Mother argues that Father's lifestyle shows expenditures beyond his income for 2022 and she contends that he should be capable of earning at least $300,000 annually, an amount that he had not earned since 2007 before he became self-employed. While Mother is correct in her argument that Father's expenditures exceed his income for 2022, Father testified that he has been maintaining his lifestyle through gifts and loans from family and friends. The Hearing Officer found Father's testimony and evidence in this regard credible by rejecting Mother's claims that he should be able to earn $300,000 per year.

The parties equally share custody of their three (3) children. At the Hearing, Father itemized the expenses he paid for the children, which totaled $23,281. Mother itemized the expenses she paid for the children, which totaled $55,806.

[The Hearing Officer then calculated Mother's gross annual income as $253,796 and Father's gross annual income as $168,000. From those numbers, it was determined that Mother received $15,579 in net monthly income, and Father received $8,696 in net monthly income.]

Each parties' percentage of expenses for the children was calculated at 41% for Father and 59% for Mother. Based upon these income figures and percentages, the Hearing Officer's "Supplemental Order Pursuant to Remand" [calculated Mother's support to be paid to Father as $1,962.00 per month. The Order started with a monthly figure of $2,877.00 to be paid in support for the children. Then, $176.00, $971.00, and $1054.00 per month were subtracted for Mother's payment of medical insurance, shared custody, and a reverse mortgage deviation, respectively. After that, $1,286.00 per month was then added in APL, yielding the abovementioned figure of $1,962.00 per month.]

[Following the Hearing Officer's initial adjudication, the lower court] denied Mother's Support Exceptions (except for a remand to the Hearing Officer to correct an error as to the amount paid by Mother in real estate taxes [reflected in the figures listed, above], which affected the calculation of the reverse mortgage deviation thereby

- 4 -

reducing the amount of support payment by Mother to Father) and denied Father's Cross-exceptions.

Trial Court Opinion, 8/28/23, at 1-4 (footnotes omitted) (some formatting altered).

Mother timely appealed from the June 9, 2023 order adopting the Hearing Officer's recommendations and thereafter complied with her obligations under Pennsylvania Rule of Appellate Procedure 1925(b).

On appeal, Mother presents the following issues for review:

1. Did the lower court err and/or abuse its discretion by improperly placing the burden of proof on Mother to prove Father's income, or lack of income, for calculation of child support when it was clearly shown that Father was making hundreds of thousands of dollars a year?

2. Did the lower court err and/or abuse its discretion in determining Father's income through failure to properly consider testimony and evidence contradicting Father's testimony and evidence regarding his income?

3. Did the lower court err and/or abuse its discretion by failing to properly consider Father's written statement as to his hidden financial resources when determining Father's credibility as to his testimony and evidence presented during the support hearing?

4. Did the lower court err and/or abuse its discretion by failing to properly consider Father's income from Dryden Court Properties and management fees from the marital rental properties when determining Father's income?

5. Did the lower court err and/or abuse its discretion by failing to properly credit Mother, in determining child support, for Father's use of rental business monies to pay rent, taxes, and other expenses where the property in which Father resides is owned by the marital rental property business?

6. Did the lower court err and/or abuse its discretion by failing to

calculate Father's earning capacity in accordance with his education background, professional background, and the number of hours he is capable of working?

7. Did the lower court err and/or abuse its discretion by improperly crediting Father for expenses he, by his own testimony, did no pay and improperly categorizing country club expenses as credits to Father related to the parties' children?

*See* Mother's Brief, at 7-8.[2]

As this case involves a child support matter, we apply the following standard of review:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

_____

[2] We express our displeasure with Mother's violation of Pennsylvania Rule of Appellate Procedure 2117(b), which explicitly prohibits argument in the statement of the case component of her brief. *See* Pa.R.A.P. 2117(b) ("It is the responsibility of appellant to present in the statement of the case a balanced presentation of the history of the proceedings and the respective contentions of the parties."). Mother's statement of the case spans thirty pages and is replete with argument. *See, e.g.*, Mother's Brief, at 15 ("To provide even greater absurdity to [Father's] position as to his income . . ."), 17 ("When it came to evidence to support this outlandish and, frankly, absurd claim, [Father] had nothing to offer."). Furthermore, given that she presented seven questions for our review yet only included five discrete issues in her argument section, Mother too has violated Pennsylvania Rule of Appellate Procedure 2119(a). *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]"). We address Mother's claims as they are presented in her brief.

***Summers v. Summers***, 35 A.3d 786, 788 (Pa. Super. 2012) (citation

omitted).

Additionally, we have explained that

this Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first[ ]hand.

When the trial court sits as fact finder, the weight to be assigned the testimony of the witnesses is within its exclusive province, as are credibility determinations, and the court is free to choose to believe all, part, or none of the evidence presented. This Court is not free to usurp the trial court's duty as the finder of fact.

***Mackay v. Mackay***, 984 A.2d 529, 533 (Pa. Super. 2009) (citations omitted)

(formatting altered).

Pennsylvania Rule of Civil Procedure 1910.16-2 ("Support Guidelines")

provides support-related guidelines to establish a party's monthly net income.

"Monthly gross income is ordinarily based on at least a six-month average of

a party's income." Pa.R.Civ.P. 1910.16-2(a). Income is calculated "from any

source." ***Id***. (enumerating possible sources of income, such as wages/salaries,

business-related income, dealings in property, interest, pensions, etc.).

Pursuant to this Rule, the fact-finder must then deduct items, such as taxes,

"to arrive at [a party's] monthly net income[.]" ***Id***., at 1910.16-2(c)(1).

Notwithstanding these calculations, if a party "willfully fails to obtain or

maintain appropriate employment, the trier-of-fact may impute to the party

an income equal to the party's earning capacity." ***Id***., at 1910.16-2(d)(4)(i).

Mother first argues that the lower court placed a burden on her to prove Father's income. Mother avers that Father "demonstratively and without any doubt whatsoever[] has failed to disclose substantial amounts and sources of his income." Mother's Brief, at 41. Mother takes issue with Father's self-generated spreadsheet wherein it indicates that he received, after "backing out the amount for rent and the monies attributed to the marital business's payment on his behalf," *id*., $74,000 in pre-tax income. **See** Ex. F-22. Mother juxtaposes this reported income against Father's "luxurious and well-heeled lifestyle[]" that was, according to Father, supported by "people simply hand[ing] him tens to hundreds of thousands of dollars[.]" Mother's Brief, at 42. Mother also claims that, during the discovery process, Father never mentioned or disclosed him benefiting from this "generosity" and did not produce any bank statements, transaction reports, or affidavits evidencing the sources or amounts that he received. **Id**., at 42-43.[3] As such, Father "had to lack credibility in his testimony, one way or another." **Id**., at 43.

Preliminarily, as illuminated, *supra*, we are bound by the credibility determinations that have already been made. Furthermore, both cases cited by Mother, **Fennell v. Fennell**, 753 A.2d 866 (Pa. Super. 2000), and **Sichelstiel v. Sichelstiel**, 272 A.3d 530 (Pa. Super. 2022), are inapt to the

---

[3] Confusingly, Mother concedes in a footnote that there was evidence of Father being the recipient of two checks from his mother. **See** Mother's Brief, at 43 n.14.

present circumstances. Whereas, in the present matter, Father is the obligee and is alleged to have ambiguous or hidden income streams, these two cases involved the question of whether a child support obligor had some element of control in the retention or disbursement of a business's corporate earnings. *See Fennell*, 753 A.2d at 868-69 ("[T]he owner of a closely-held corporation cannot avoid a support obligation by sheltering income that should be available for support by manipulating salary, perquisites, corporate expenditures, and/or corporate distributions amounts."); *Sichelstiel*, 272 A.3d at 538. The effect of an affirmative answer to that question requires the obligor to "bear the burden of proving [corporate retained earnings] were 'necessary to maintain or preserve' the business." *Fennell*, 753 A.2d at 869 (citation omitted).

Here, Mother vaguely states that Father "runs businesses which no one, not even the appointed receiver in this matter, has access to; rather, the accounts and the funds are shrouded in secrecy." Mother's Brief, at 46.[4] In short, Father "failed to disclose the entirety … of his income as [Mother] clearly

_____

[4] Mother also cites to an email from Father that was appended, for the first time, in her motion for reconsideration that apparently demonstrates Father's "access to funds far beyond what [Mother] possesses[.]" Mother's Brief, at 47 (stating, further, that Father "will deploy those funds to litigate this matter without end[]"). The lower court never ruled on this motion, and we see no basis for *sua sponte* consideration of this motion or its attachment. Notwithstanding the lower court's lack of ruling, "a trial court may … properly refuse to consider new evidence presented for the first time in a motion for reconsideration." *Bollard & Associates, Inc. v. H & R Industries, Inc.*, 161 A.3d 254, 256 (Pa. Super. 2017).

demonstrated that [Father] has access to substantial, undisclosed, sources of income." *Id*., at 49. However, the lower court "shifted the burden to [Mother] to prove [Father's] income." *Id*.

Mother has failed to show an abuse of discretion in the Hearing Officer's, and by extension lower court's, calculation of Father's income, and Mother has presented no cogent basis to disturb the lower court's findings of fact. Moreover, Mother has not demonstrated any sort of improper shifting of burdens as to income calculations. Father presented evidence of his income from 2022, which was accepted as credible by the lower court, and Mother failed to persuade the fact-finder, through evidence or argument, that Father's submissions and testimony were untruthful or incomplete.

After an exhaustive review of its contents, we find that the May 24, 2023 Memorandum and Order is supported by the record. **See** Memorandum and Order, 5/24/23. Therein, *inter alia*, the court found no abuse of discretion in the Hearing Officer's determination that, despite his $99,639 in reported income in 2022, Father's earning capacity was $168,000, which inured to Mother's benefit. **See id**., at 6 (unpaginated). The court also fully considered the fact that "Father has a lifestyle that exceeds his income." **Id**., at 7. The court noted, through Father's testimony, that "he borrowed $100,000 from his mother and produced a promissory note for this amount dated October 14, 2021 evidencing the loan." **Id**.; **see also** N.T., 1/4/23, at 82 ("That is a promissory note that [Father] drafted to provide evidence of the fact that

[Father] borrowed $100,000 from [his] mother."). This promissory note, along with other documentary evidence establishing the sources of Father's loans and/or gifts coming from friends and family, has been made part of the record. ***See, e.g.***, Promissory Note, 10/14/21; Promissory Note, 12/30/21 (establishing that Father had received an additional $75,000 in loans from his mother). Beyond documentary submissions, the court also detailed other instances of both loans and gifts that were described in Father's testimony. ***See*** Memorandum and Order, 5/24/23, at 8-9 (outlining, *inter alia*, Father's four-to-five-figure gifts from high school, college, and golfing friends). The court found that

> [i]f Mother wanted to prove that something nefarious was going on with Father receiving undisclosed income, she had to present some evidence other than mere speculation to support such a claim. She had all of the bank records necessary to cross-examine father, but she did not present such records and/or admit them into evidence.

Memorandum and Order, 5/24/23, at 8.

Gifts are not income for the purposes of support calculations. ***See Jacobs v. Jacobs***, 884 A.2d 301, 307 (Pa. Super. 2005) ("A gift is not given in exchange for services, so it does not fit into the statutory definition of income."). Loans, too, are generally not included in the calculation of income for child support. ***See Fichthorn v. Fichthorn***, 533 A.2d 1388, 1390 (Pa. Super. 1987). Without a scintilla of evidence providing tangible support to the supposition that Father, as an effort to circumvent support calculations, receives a sizable income from sources that were not considered, we must

defer to the credibility determinations made by the lower court, which found Father to be credible in providing an accurate overview of his income and spending habits. Accordingly, Mother is due no relief on this issue.

In her second claim, Mother contends that the court "failed to account for the record on several items affecting support." Mother's Brief, at 49 (capitalization omitted). Mother's sole argument in this section is that there was "no factual support for the finding that [Father] has little income and earning power[.]" *Id*., at 50. As this averment is not materially distinguishable from her first argument, *see id*., at 49 ("In the end, much of the errors depend on, as before, that [Father] should not be granted any benefit of the doubt given his statements, conduct, and obvious deceit."), we similarly find no merit here and note, again, that the court made credibility determinations as to the veracity of Father's testimony and received several submissions from him evidencing the sources of his money.

In her third allegation, Mother challenges the exclusion of Father's $70,000 court-ordered management fee in the calculation of his income. Mother asserts that "[t]here is no explanation whatsoever in the record or in the decisions below as to why this [fee] was excluded other than vague references to [Father's] testimony which has already been shown to be entirely unreliable." *Id*., at 50. Mother insists that Father "has control over these payments as he has begun taking them." *Id*., at 51.

The record, from the receiver's testimony, reflects that there was

insufficient cash available in the real estate entities for Father to be paid a $70,000 salary. *See* N.T., 1/4/23, at 47. Father later confirmed that he has not "been paid on" the order establishing his right to this $70,000 salary. *Id*., at 109.

Although Mother, conceding that it is not part of the record, writes that Father has since taken "thousands upon thousands of dollars for said fee[,]" Mother's Brief, at 27 n.8, she has not demonstrated that this unproven post-hearing claim, a claim based on evidence that dehors the record, is even reviewable on appeal. Substantively, notwithstanding his entitlement thereto, the lower court considered this potential source of income and determined that Father, in fact, had not been paid a salary from the real estate entities. Nevertheless, the lower court's opinion makes clear that this salary provided a point of reference in calculating Father's earning capacity. *See* Memorandum and Order, 5/24/23, at 6 (providing approving context to Father's earning capacity assessed by the Hearing Officer: "if the amount of $99,639 actually paid to Father in 2022 was added to the amount of salary that the court directed should be paid to Father in the amount of $70,000, this would total $169,639[]")*.*

Even if Father's court-ordered salary was totally excluded from the court's income calculations, Mother has failed to demonstrate that this act was an abuse of discretion or an error of law. Simply put, there is no record evidence establishing that Father received any income whatsoever from the

real estate entities. Absent any evidence through which to contradict this determination made by the lower court, we conclude that the lower court did not err in its treatment of Father's then unrealized salary.

In her fourth averment, Mother castigates the lower court's determination of Father's earning capacity, calling it a "farce[.]" Mother's Brief, at 51. Mother also illuminates "the real estate business' net income [of $559,000.00,]" *id*., at 52, as "the earning capacity [that should have been] assigned to [Father] absent evidence to the contrary[.]" ***Id***. Other than citations to the Support Guidelines cited, *infra*, Mother's brief contains no authority to support her position nor record citations[5] to establish that this $559,000.00 figure *ipso facto* should have been regarded as Father's income for earnings capacity purposes.

Our Support Guidelines state that "[w]hen a party willfully fails to obtain or maintain appropriate employment, the trier-of-fact may impute to the party an income equal to the party's earning capacity." Pa.R.Civ.P. 1910.16-2(d)(4)(i). *Inter alia*, in determining earning capacity, the fact-finder must consider employment and earnings history, age, assets, job skills, and educational attainment. ***See*** Pa.R.Civ.P. 1910.16-2(d)(4)(ii). "After assessing a party's earning capacity, the trier-of-fact shall state the reasons for the

---

[5] The argument section of her brief provides no context to the real estate business' net income. However, earlier in her brief, Mother concedes that this amount is derived from "a marital business and this is money which goes to equitable distribution[.]" Mother's Brief, at 30 n.12.

assessment in writing or on the record." Pa.R.Civ.P. 1910.16(d)(4)(i)(C).

Even accounting for Mother's argument that Father "testified that he made $300,000.00 per year plus commission in his prior employment," Mother's Brief, at 52, that fact was discounted by the reality of Father's contemporary employment endeavors. The court found that Father was "53 years old and has been self-employed as a real estate developer most of his adult life. Father testified and submitted evidence of his current job search, which has not been fruitful. Mother presents no valid arguments for her conjecture that Father should be able to find a job and earn what he was able to earn many years ago." Memorandum and Order, 5/24/23, at 7.[6] The court also wrote that Father had "testified that he has applied for a variety of jobs and has been networking but has been unable to find employment. He did earn a small fee from Database Services in the amount of $6,300 in 2022. The Hearing Officer noted that transitioning to employment working for another individual or company may not be easy for Father, who has been self-employed most of his adult life." *Id*., at 6. We find no abuse of discretion in the court's determination as to Father's earning capacity, which reflected a measured consideration of all relevant factors under Rule 1910.16-2(d)(4)(ii).

_____

[6] We note that while the Memorandum and Order indicates that Father was 53 years old, the lower court's Opinion addressing this appeal, filed the same year, states that Father is 56. Notwithstanding this ambiguity, based upon the date of birth Father provided in his complaint, it appears that he was 54 years old at the time of the ruling under appeal. **See** Complaint in Child Support, Spousal Support, and Alimony *Pendente Lite*.

In her final claim, Mother asserts that Father erroneously received credit for a total of $7,500 in country club fees for the three minor children as well as a $1,073 credit for one child's baseball camp. *See* Mother's Brief, at 52-53.

The court found that:

> [As to the $7,500 in country club fees:] During the marriage, the family belonged to the Philadelphia Country Club. During the summer months, this is where the child attended camps, took swim lessons, joined the swim team, participated in various sporting activities/lessons and had social get-togethers with friends. After the parties separated, Father continued to maintain the club membership and take the children there as the parties had done during their marriage. The Hearing Examiner determined that $2,500 should be attributable to each of the children per year from the country club dues and fees paid by Father.
>
> [As to the $1,073.00 in baseball fees:] Father clarified that the reason for paying this [$1,073.00] fee outside the cost of the child's travel team participation costs was because this fee was paid by him for the son to take private baseball lessons at Villanova University.]

*See* Memorandum and Order, 5/24/23, at 10-11.

Father testified that it is "just under $2,500 per child per year to belong to the club." N.T., 1/4/23, at 128; *see also id*., at 128-29 ("[Father's] family recognizes the importance of the club … for [his] children[.] … [Father's children] are used to the club and the benefits of the club[.]"). However, that yearly membership figure does not include "tennis, swimming lessons[.]" *Id*. Therefore, with the court finding Father credible as to the benefit of the country club for the children, $2,500 per child serves as the floor, rather than

the ceiling, of the amount attributable to the country club and paid by Father. As such, it was not an abuse of discretion for the court to ascribe a total valuation of $7,500 on the amount paid by Father to the country club in support of the three children.

As to the baseball-related fees, Mother asserts that Father owns "the arena which hosts the camps, [so] the camp is at no cost to him." Mother's Brief, at 54. Father admitted that it would normally cost $4,200 to play on a baseball travel team called the Pioneers, but he does not "get charged that because [he] own[s] the facility and [he] owns the Pioneers." N.T., 1/30/23, at 108. However, as explicitly identified by the lower court, the $1,073.00 figure deals with private baseball lessons, not a cost-free travel team. In fact, Father provided an itemized list of transactions amounting to $1,073.00 for the purposes of child's baseball lessons, which Mother does not discuss, much less contradict. *See* Ex. F-20. With the record supporting Father's indication that he has paid for his child's baseball lessons and Mother failing to directly challenge these payments, we conclude that the lower court did not abuse its discretion in placing a $1,073.00 valuation, as an amount Father had paid, on the child's baseball lessons.

In finding no merit to any of Mother's claims raised on appeal, we affirm the lower court's order of support.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>11/19/2024</u>